UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

LANDON HELMS, KAIYA ROBERTSON, JAYDA BUSHAY, and NANETTE NOVAK-KLOTZ,

Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

Defendant.

Case No. 1:26-cv-00568-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court is Plaintiffs Landon Helms, Kaiya Robertson, Jayda Bushay, and Nanette Novak-Klotz's Motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. 2 (the "Motion"). Plaintiffs are students at Boise State University ("BSU") and members of BSU's cross country and/or track and field teams. Through their Motion, Plaintiffs ask the Court to enjoin Defendant National Collegiate Athletic Association (the "NCAA") from enforcing NCAA Bylaw 12.6 as to Plaintiffs so they may be eligible to compete in the upcoming cross country and/or indoor track and field seasons. Absent an injunction, Plaintiffs will lose out on valuable competitive experience and potential NIL and sponsorship deals.

For the reasons set forth below, Plaintiffs' Motion is DENIED in PART. The Motion is denied to the extent Plaintiffs seek a temporary restraining order. The Court will consider

the preliminary injunction portion of Plaintiffs' request only after more briefing and a hearing.

## II. BACKGROUND[1]

The NCAA is an unincorporated, not-for-profit, educational organization located in Indianapolis, Indiana, that governs over 1,100 member institutions, with approximately 350 institutions in Division I (the highest level of competitive collegiate sports). Through the NCAA's Division I Constitution and Bylaws (the "Bylaws"), the NCAA regulates intercollegiate sports among its Division I member institutions, including BSU. Failure of a member institution to comply with the Bylaws may result in various putative measures, such as fines, suspensions, vacating wins, or the shutdown of a specific athletic program for a period.

Through its Bylaws, the NCAA regulates the number of years a student-athlete is eligible to compete at a NCAA member institution. Prior to June 22, 2026, a student-athlete competing in Division I had five calendar years to compete in only "four seasons of intercollegiate competition in any one sport." Dkt. 1-1 at 58 (the "Four-in-Five Rule"). With few exceptions, the five-year period ran "from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution." *Id.*

On June 22, 2026, the NCAA adopted a new age-based eligibility rule, which replaces the Four-in-Five Rule and allows student-athletes to compete in all five seasons

[1] At this stage, the Court has only Plaintiffs' version of the facts. The background information is, therefore, in accordance with their representations.

during their five years of eligibility (the "Five-in-Five Rule"). With few exceptions, the five-year clock begins on the earlier date of either: (1) when the student-athlete enrolls at and attends a collegiate institution, or (2) the start of the first academic year immediately following the student-athlete's 19th birthday. The new Five-in-Five Rule is forward-looking, meaning it applies to all student-athletes initially enrolling full-time in college in the fall of 2027 or later. Importantly, for students initially enrolling full-time in college in the fall 2026 and current student-athletes *who had eligibility remaining* after the 2025–26 academic year, Division I member institutions may apply the Four-in-Five Rule *or* the new Five-in-Five Rule, whichever is most favorable to the student-athlete. For student-athletes who have no eligibility remaining under the original Four-in-Five Rule, they are not granted an additional year of eligibility. The following chart[2] summarizes how a Division I school should apply the new eligibility rules:

| **Student-athletes** | **Which eligibility rules apply** |
|---|---|
| Student-athletes who used their final season of competition (under previous rules) during 2025–26. | No additional eligibility. |
| Current student-athletes with eligibility remaining (under previous rules) after the 2025–26 academic year. | Either the previous rules OR the new age-based model, whichever is most beneficial to the student-athlete. |
| Prospects who initially enroll full time at any college or university during 2026–27. | Either the previous rules OR the new age-based model, whichever is most beneficial to the student-athlete. |

[2] Megan Durham Wright, *Division I adopts age-based eligibility model*, NCAA (June 23, 2026), https://www.ncaa.org/division-i-adopts-age-based-eligibility-model/.

| **Student-athletes** | **Which eligibility rules apply** |
|---|---|
| Prospects who initially enroll full time at any college or university in fall 2027 or later. | The age-based model only. |

Thus, student-athletes who graduated high school in 2022 and competed four straight years in college (like each of the Plaintiffs in this case) were not granted a fifth year of eligibility, while student-athletes who graduated high school in 2022 and had eligibility remaining under the Four-in-Five Rule (whether through a redshirt year, waiver, or exception) retained their eligibility to compete in the 2026–27 academic year.[3]

Plaintiffs graduated high school in 2022 and are members of BSU's cross country and/or track and field teams. Under the Four-in-Five Rule, Plaintiffs have eligibility remaining in at least one sport for the upcoming 2026–27 academic year.[4] Relevant to this Motion, however, Plaintiffs exhausted their eligibility for at least one other sport because they already competed in four seasons of that sport by the end of the 2025–26 academic year: Helms, Robertson, and Bushay have completed four seasons of indoor track and field; and Robertson and Novak-Klotz have completed four seasons of cross country. Because each exhausted their eligibility to compete in these sports under the old Four-in-Five Rule,

[3] For those student-athletes who have eligibility remaining under the Four-in-Five Rule, they would still be limited to only four *total* years of competition because the new Five-in-Five Rule has a hard-stop on eligibility after five consecutive years regardless of years of competition and would not be more beneficial to such athletes.

[4] For purposes of eligibility, the NCAA treats cross country, indoor track and field, and outdoor track and field as three distinct sports. All Plaintiffs have one year of eligibility remaining to compete in outdoor track and field, and Novak-Klotz also has one year of eligibility remaining to compete in indoor track and field. Under either rule, Plaintiffs' eligibility to compete in these sports will end at the end of the 2026–27 academic year unless an exception applies.

Plaintiffs were not granted an additional year of eligibility under the new Five-in-Five Rule.

Plaintiffs have benefitted and/or hope to benefit from NIL royalties and sponsorship agreements tied to their athletic careers and state that extending their athletic careers in Division I will allow them to "continue developing against elite competition, build his [or her] reputation and exposure, and pursue sponsorship opportunities that could help support a professional athletic career." Dkt. 1, at ¶ 15.

BSU's cross country season begins on September 18, 2026, while its indoor track and field season begins in early December 2026. It is unclear whether BSU submitted applications for eligibility waivers to the NCAA on any of the Plaintiffs' behalf. Without the waiver, Robertson and Novak-Klotz are ineligible to compete on the BSU cross country team, and Helms, Robertson, and Bushay are ineligible to compete on the BSU indoor track and field team.

## III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction or a temporary restraining order ("TRO") must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (citation modified). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l*

*Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980); *see also* Fed. R. Civ. P. 65.

A key difference between a TRO and a preliminary injunction is its respective duration. A TRO is typically for a limited time, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n.1 (D. Or. 2018).

## IV. DISCUSSION

For the reasons set forth below, the Court finds Plaintiffs have not met their burden for a TRO.

### A. Indoor Track and Field

Plaintiffs Helms, Robertson, and Bushay are members of BSU's track and field team and seek a TRO so they may compete in BSU's upcoming indoor track and field season. These Plaintiffs have not shown that absent a TRO, they will be irreparably harmed because the indoor track and field season does not begin for another three months. *See Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 2018 WL 8222261, at *3 (C.D. Cal. Dec. 20, 2018) ("[A] TRO is justified only if there is a genuine emergency."). There is ample time for the parties to submit briefing on Plaintiffs' request for a preliminary injunction. Thus, to the extent Plaintiffs request a TRO to compete in BSU's upcoming indoor track and field season, that request is denied.

The remainder of this decision addresses whether Robertson and Novak-Klotz are entitled to a TRO so they may compete in BSU's upcoming cross country season, which

begins on September 18, 2026.[5] For the reasons set forth below, the Court finds they are likewise not entitled to a TRO.

**B. Likelihood of Success**

"Likelihood of success on the merits 'is the most important'" factor in determining whether a preliminary injunction should issue. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). This standard "does not require a plaintiff to show that it is more likely than not that it will win on the merits" but rather that "there is a substantial case for relief on the merits." *Watersheds Project v. Zinke*, 336 F. Supp. 3d 1204, 1218 (D. Idaho 2018).[6]

Robertson and Novak-Klotz bring three counts against the NCAA: breach of contract with respect to the NCAA Bylaws ("Count I"); promissory estoppel ("Count II"); and restraint of trade in violation of Section I of the Sherman Act, 15 U.S.C. § 1 and the Idaho Competition Act, Idaho Code § 48-105 ("Count III"). The Court will discuss the likelihood of success of each count in turn.

*1. Count I: Breach of Contract*

The NCAA Division I Manual sets forth the NCAA's Constitution and Bylaws and

[5] The NCAA argues Robertson and Novak-Klotz's delay in bringing their lawsuit cuts against their argument that emergency relief is necessary. But Robertson and Novak-Klotz could not have known at the end of the 2025 cross country season that in June 2026, the NCAA would grant their fellow teammates an additional year of eligibility, which is when the alleged harm arose. A two-month delay (if one can call it a delay) is hardly sufficient to warrant denial of the TRO on that ground alone.

[6] The Ninth Circuit has not provided clear guidance on whether this type of injunction is prohibitive or mandatory. *See Blythe v. NCAA*, -- F.4th --, 2026 WL 2653349, at *3 n.2 (9th Cir. Sept. 9, 2026); *Martinson v. NCAA*, 804 F. Supp. 3d 1109, 1123–24 (D. Nev. 2025), *opinion vacated as moot by* 2026 WL 2653095 (9th Cir. Sept. 9, 2026) (discussing without deciding whether an injunction against the NCAA from enforcing its Four-in-Five Rule is a mandatory or prohibitive injunction). At this stage, it appears to this Court that under either standard, the outcome would be the same.

requires its Bylaws "to promote the opportunity for institutions and eligible student-athletes to engage in fair competition." Dkt. 2-1, at 16. Robertson and Novak-Klotz argue that by "excluding the high-school class of 2022 from the new Five-in-Five Rule while extending a fifth season of eligibility to every adjacent high-school class," the NCAA breached its own express commitment to fairness as well as the implied covenant of good faith and fair dealing. *Id.*

"The elements for a claim for breach of contract are: (a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Edged In Stone, Inc. v. Nw. Power Sys., LLC*, 321 P.3d 726, 730 (Idaho 2014) (quoting *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232, 241 (Idaho 2013)).[7]

At this stage, the Court assumes that the NCAA Constitution and Bylaws constitutes a binding contract on the NCAA and its members. *See Kemmer v. Newman*, 387 P.3d 131, 134 (Idaho 2016) ("The bylaws of a corporation are equivalent to contracts among the members of the association' and are binding on its members." (citation modified)). The Court also assumes that Robertson and Novak-Klotz, as Division I student-athletes, are intended third party beneficiaries of that agreement with rights to enforce its provisions. *See Battle v. NCAA*, 2024 WL 4685604, at *4 (N.D.W. Va. May 28, 2024) (finding it "quite clear that student-athletes are the beneficiaries" of the NCAA's Constitution and Bylaws).

The NCAA's decision to exclude student-athletes who exhausted their eligibility

---

[7] Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution."

under the previous Four-in-Five Rule from benefitting from an additional year of eligibility under the new Five-in-Five Rule, while disappointing for these student-athletes, does not appear to violate the express or implied terms of its Bylaws. Although the Bylaws employ a general commitment to fairness among intercollegiate athletics, those provisions are likely overridden by specific provisions addressing student-athletes' eligibility. *See Twin Lake Vill. Prop. Ass'n, Inc. v. Crowley*, 857 P.2d 611, 617 (Idaho 1993) ("It is well established that specific provisions in a contract control over general provisions where both relate to the same thing.") (citing *Morgan v. Firestone Tire and Rubber Co.*, 201 P.2d 976, 983 (1949)). Furthermore, the new Five-in-Five Rule appears to be administered consistently among student-athletes *in the same high-school class*. For example, student-athletes who graduated high school in 2022 and took a redshirt year would have eligibility under either rule to compete in the 2026–27 academic year, which would be their fourth year of competition. Indeed, all Plaintiffs fall into this category with respect to outdoor track and field, and Novak-Klotz with respect to indoor track and field. As it presently appears to the Court, under either rule, no 2022 (or 2021[8]) high school graduate is eligible to compete more than four seasons in a single sport.

Because it does not appear the NCAA's application of Bylaw 12.6 violates the express terms of the Bylaws, it likely does not violate the implied covenant. "The [implied] covenant requires that the parties perform in good faith the obligations imposed by their

[8] The same appears to be true for 2021 high school graduates, who also were not part of the NCAA's 2020 COVID-19 waiver. *See* Dkt. 1, at 14–15 (alleging that high school classes of 2017–2020, and 2023–2025, benefitted from an additional year of competition).

agreement, and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841 (Idaho 1991) (citation modified). Although student-athletes who graduated high school in 2022 and exhausted their eligibility under the Four-in-Five Rule were excluded from benefitting from an additional year of eligibility under the new Five-in-Five Rule, there are no allegations that such decision was made in bad faith. Wherever the NCAA decided to draw the line would have left some group unsatisfied—that the exclusion fell upon the high school class of 2022 is unfortunate but not nefarious. While it may be true that the high school class of 2022 was not included in either the COVID-19 waiver or the Five-in-Five Rule change, the two events seem to be unrelated.[9] Thus, Robertson and Novak-Klotz appear to be unlikely to succeed on their breach of contract claim.

2. *Count II: Promissory Estoppel*

A cause of action for promissory estoppel requires a plaintiff to prove: "(1) reliance upon a specific promise; (2) substantial economic loss to the promisee as a result of such reliance; (3) the loss to the promisee was or should have been foreseeable by the promisor; and (4) the promisee's reliance on the promise must have been reasonable." *SilverWing at*

---

[9] Robertson and Novak-Klotz also argue the NCAA breached the implied covenant because it unfairly excluded them from being able to benefit from the *House v. NCAA* Settlement, which allows Division I schools to pay student-athletes directly from an annual pool of $20.5 million. *See House v. NCAA*, Case No. 4:20-cv-03919 (N.D. Cal). But Robertson and Novak-Klotz make no allegations as to how much BSU previously paid (or will pay) them, and thus the Court at this stage is unable to determine whether Robertson and Novak-Klotz will succeed on their implied covenant claim based on foregone *House* Settlement payments.

*Sandpoint, LLC v. Bonner County*, 435 P.3d 1106, 1115 (Idaho 2019) (quoting *Zollinger v. Carrol*, 49 P.3d 402, 404 (Idaho 2002)).

At this stage, it does not appear the NCAA made any specific promises on which Robertson and Novak-Klotz detrimentally relied. Robertson and Novak-Klotz argue they "made consequential—and often irreversible—decisions about when to compete and how to structure their academic, financial, and personal lives based on the eligibility regive and the level playing field the NCAA promised them." Dkt. 2-1, at 19. But they do not say what decisions they would have made differently had they known the NCAA was going to adopt the Five-in-Five Rule after they exhausted their eligibility, and it is unclear what opportunities they relinquished in reliance on previous statements made by the NCAA. What's more, as the NCAA points out, the new Five-in-Five Rule does not apply to Robertson and Novak-Klotz, so they likely cannot show they detrimentally relied on prior promises (if any) made by the NCAA. Thus, Robertson and Novak-Klotz are unlikely to succeed on their promissory estoppel claim.

3. *Count III: The Sherman Act and Idaho Competition Act*

Finally, Plaintiffs challenge the Five-Year Rule as a violation of Section 1 of the Sherman Act and Section 48-105 of the Idaho Competition Act.[10] The Ninth Circuit treats the Five-Year Rule as a commercial restraint subject to the Sherman Act. *See Blythe*, --

[10] In this case, Plaintiffs' sole hook for federal jurisdiction is its Sherman Act claim. However, post-*Blythe*, the bar to succeed on a Sherman Act claim is clearly high, and the Court is reluctant to retain jurisdiction over Plaintiffs' state-law claims if it ultimately dismisses their Sherman Act claim. For purposes of this TRO motion, the Court will exercise its supplemental jurisdiction over Plaintiffs' state law claims. However, the Court may revisit the issue after further briefing on the motion for preliminary injunction. The Court invites the Plaintiffs to seriously consider whether it should bring its state claims in Idaho state court, especially given the timely issues involved.

F.4th --, 2026 WL 2653349, at *4; *see also NCAA v. Alston*, 594 U.S. 69, 94 (2021) (finding the NCAA is a "commercial enterprise" subject to the Sherman Act); *Robinson v. NCAA*, 172 F.4th 271, 289 (4th Cir. 2026) (joining other appellate courts in concluding post-*Alston* that the NCAA's eligibility rules are subject to the Sherman Act) (citing *Elad v. NCAA*, 160 F.4th 407, 414-15 (3rd Cir. 2025); *Fourqurean v. NCAA*, 143 F.4th 859, 863 (7th Cir. 2025)). The Ninth Circuit also applies "a three-step, burden-shifting framework," called the rule of reason, for "distinguish[ing] between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Blythe*, -- F.4th --, 2026 WL 2653349, at *5 (quoting *Alston*, 594 U.S. at 96); *see also Robinson*, 172 F.4th at 291–92 (finding a "close read of *Alston* suggests" that the Five-Year Rule is not "necessary to produce a game," and therefore must be evaluated using the rule of reason analysis).

A threshold issue in this case will be whether Plaintiffs have provided sufficient support for the Court to define the relevant market. *See Johnson v. NCAA*, 2025 WL 1790345, at *10 (D. Mont. 2025) ("First, 'the plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market.'") (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018)). Indeed, in cases involving challenges to the NCAA's eligibility rules, several appellate courts have reversed lower court injunctions for failing to define the relevant market. *See Elad*, 160 F.4t at 416–17; *Robinson*, 172 F.4th at 294; *Fourqurean*, 143 F.4th at 869–70. This requires more than a "cursory analysis of the relevant market." *Blythe*, -- F.4th --, 2026 WL 2653349, at *6. Importantly, the rule-of-reason analysis "require[s] a well-

defined relevant market and cannot rely on antiquated market definitions accepted on different evidence and in a different posture." *Id.* (quoting *Robinson*, 172 F.4th at 294).

Under *Blythe*, it is unlikely Robinson and Novak-Klotz will succeed on their Sherman Act claim because they did not submit concrete evidence to define the relevant market. Although they argue the NCAA enjoys monopsony power over the market for college athletics and the Bylaws are a horizonal restraint on trade, the Ninth Circuit has rejected such an argument for a lesser market definition requirement. *Blythe*, -- F.4th --, 2026 WL 2653349, at *7 ("Whether an antitrust violation exists necessarily depends on a careful analysis of market realities.") (citing *Alston*, 594 U.S. at 93). And even if they could establish a sufficient market definition, Robinson and Novak-Klotz similarly did not submit evidence that would allow the Court to conclude the NCAA's application of Bylaw 12.6 has a substantial anticompetitive effect on the relevant market. *See id.* at *8 ("That [plaintiff] was personally injured by [Bylaw 12.6] does not evidence the Rule's anticompetitive effect on the market as a whole."). Accordingly, on the present record , it appears Robertson and Novak-Klotz are unlikely to succeed on their antitrust claims.[11]

### C. The Remaining *Winter* Factors

Because the Court preliminarily finds that Robertson and Novak-Klotz are unlikely to succeed on the merits, the Court need not address the remaining *Winter* factors. *See*

[11] The parties largely ignore Plaintiffs' antitrust claim under the Idaho Competition Act. For similar reasons as explained in relation to Plaintiffs' Sherman Act claim, it appears unlikely Robertson and Novak-Klotz proffered sufficient evidence to succeed on this claim under Idaho law. *See Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1085 (Idaho 2010) (finding plaintiff "could not maintain a cause of action under the Idaho Competition Act because there was no evidence that the defendants were engaged in conduct that would subject them to antitrust actions").

*Disney Enters.*, 869 F.3d at 856 ("[I]f a movant fails to meet this threshold inquiry [of likelihood of success on the merits], the court need not consider the other factors" (citation modified)). Even so, for completeness, the Court will briefly touch on the remaining factors.

Preliminarily, it is the Court's view that Robertson and Novak-Klotz are likely to suffer harm if they are unable to compete in the 2026 cross country season. *See Ohio v. NCAA*, 706 F. Supp. 3d 583, 597 (N.D.W. Va. 2023) (listing cases where courts held lost opportunity to participate in collegiate sports is irreparable harm). The balance of hardship also tips (slightly) in Robertson and Novak-Klotz's favor because each stands to lose competitive experience and potentially miss out on NIL and sponsorship opportunities, while the NCAA would be minimally harmed if Robertson and Novak-Klotz compete.[12] However, the harm to Robertson and Novak-Klotz appears to be mitigated by the fact that both student-athletes are still members of, and work out with, BSU's track and field team, and thus they still have opportunities to compete in Division I and earn NIL and sponsorship revenues during the 2026–27 academic year via the track and field team. For similar reasons, it appears the public interest is not necessarily served by granting the TRO because Robertson and Novak-Klotz will still be able to continue working toward earning their degrees.

---

[12] According to Robertson and Novak-Klotz, other student-athletes on BSU's cross country team would not miss out on that same competitive experience because cross-country teams may run their entire roster at meets during the regular season, and it is unclear at this stage whether some student-athletes will be left off the roster if Robertson and Novak-Klotz compete. Even so, for every finish place Robertson and Novak-Klotz earn, another student-athlete is displaced from earning that same place. *See West Virginia v. B.P.J.*, 146 S. Ct. 2356, 2381 (2026) ("Every competitor who wins a race or competition deprives another athlete of that victory, or medal, or prize.").

In sum, the remaining *Winter* factors do not tip in Robertson and Novak-Klotz's favor. But even if they did, they do not tip far enough to override the unlikelihood of success on the merits and justify granting a TRO.

**D. The Rule of Restitution and Bond**

Because the Court is not granting the motion for TRO, it need not address the rule of restitution and bond.

## V. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) is DENIED in PART. It is DENIED to the extent Plaintiffs seek a TRO. Plaintiffs' request for a preliminary injunction will be HELD IN ABEYANCE pending further briefing and a hearing.
2. The NCAA's response to Plaintiffs' Motion is due on or before September 25, 2026, and Plaintiffs' reply on or before October 2, 2026.
3. A hearing will be held on October 15, 2026, at 9:00 a.m. at the Federal Courthouse in Boise, Idaho, Courtroom 1. On or before October 9, 2026, the parties will inform the Court via joint letter whether the hearing will be evidentiary and, if so, how long the parties anticipate needing for the hearing.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: September 16, 2026

David C. Nye
U.S. District Court Judge